# Baltimore & Ohio Railroad Company *v.* Gray's Ferry Abattoir Company, Appellant.

*Common carriers—Carriers—Railroads—Demurrage for cars—Reasonable rules.*

A carrier by rail may establish a rule fixing a reasonable rate for the detention of cars after a sufficient period for unloading, without specific notice to the shippers or consignees.

It is the duty of a person dealing with a railroad company, unless relieved therefrom by agreement, to provide himself with the necessary facilities for the prompt unloading and return of the company's cars.   If the number of cars consigned to him is so large as to make this impracticable, he should limit his shipments to his capacity for dealing with them, or pay charges for delay.

From the usual methods of business, the defendant must be presumed to have controlled the quantity of freight shipped on its own order.

Argued Dec. 8, 1904.   Appeal, No. 170, Oct. T., 1904, by defendant, from order of C. P. No. 5, Phila. Co., March T., 1904, No. 1660, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Baltimore & Ohio Railroad Company v. Gray's Ferry Abattoir Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MOR-RISON and HENDERSON, JJ.   Affirmed.

Assumpsit for demurrage.
The facts appear by the opinion of the Superior Court.

*Error assigned* was the order of the court.

*Frank R. Shattuck,* for appellant.

512   B. & O. R. R. CO. *v.* GRAY'S FERRY CO., Appellant.

*Wm. Findlay Brown*, with him *Samuel Goodman, Jr.*, for appellee, cited: Penna. R. R. Co. v. Midvale Steel Co., 201 Pa. 624.

OPINION BY SMITH, J., March 14, 1905:

This case is ruled by Penna. R. R. Co. v. Midvale Steel Co., 201 Pa. 624, which it closely resembles, both in general character and in its chief details. That case is an authority that settles the right of a carrier by rail to establish a rule fixing a reasonable charge for the detention of cars after a sufficient period for unloading, without specific notice to shippers or consignees ; and in this case, as in that, "the rule is manifestly a reasonable one, both as to time and charge." The only question presented here is whether the affidavit of defense sets forth, specifically, facts that constitute a defense to the specific items of the plaintiff's claim.

The declaration states the several items of charge, embracing in each the car number, the date of arrival, of delivery and of release, the number of days each car was detained, and the amount claimed for detention. The affidavit of defense, so far as it sets forth matters that have been settled by the case cited, need not be considered. Its further allegations are general and indefinite, and it fails to meet, specifically, any item of the plaintiff's claim. It was the plaintiff's duty, as a carrier, to transport and deliver all coal consigned to the defendant. It was the defendant's duty, unless relieved therefrom by agreement with the carrier, to provide itself with the necessary facilities for the prompt unloading and return of the plaintiff's cars. If the number of cars consigned to it was so large as to make this impracticable, it should limit its shipments to its capacity for dealing with them, or pay charges for delay. From the usual methods of business, the defendant must be presumed to have controlled the quantity of coal shipped on its order; and no lack of such control is suggested in the affidavit.

So far as appears from the declaration and affidavit, the cars for which the charge is made, shown in the exhibit attached to the declaration, are all the cars that were delivered. The affidavit alleges an agreement with the plaintiff by which only two cars a week were to be delivered, and that, as shown by the exhibit, the plaintiff "violated this agreement, and at times

failed to deliver any cars during some weeks, and at other times delivered many more than two cars per week. The exhibit, however, is far from bearing out the allegation of excessive delivery. It sets forth the delivery of cars as follows: April 4, two; June 20, four; July 30, one; August 6, 15, 22 and 31, each two; September 8 and 16, each two; 22, 28, and October 2, each one; October 13, 20, 27 and November 4, each two; November 12, one; 20, two; 27, and December 15 and 18, each one. This shows a delivery of more than two cars in a week in but a single instance, and frequently a delivery of only one car in a week. Unless the two cars per week were to consist of a semiweekly delivery of one car—which is not alleged in the affidavit—the agreed limit was substantially observed. Further, it does not appear from the affidavit that the defendant ever complained of any violation of the alleged agreement, or refused to receive more than the number of cars it provided for. It was entirely competent for the defendant to waive its observance; and in accepting all cars consigned to it, without objection, it must be regarded as having waived it.

Judgment affirmed.