# Pennsylvania Railroad Company, Appellant, v. Bulah Shaft Coal Company.

*Railroads—Carriers—Detention of cars—Demurrage.*

1. A carrier by rail may establish a rule fixing a reasonable rate for the detention of cars after a sufficient period for unloading, without specific notice to the shippers or-consignee.

*Appeals—Paper-book—Printing evidence.*

2. On an appeal by plaintiff, a railroad company, from a judgment on a verdict for defendant, a coal company, where the suit is for a claim for demurrage of cars, and the case turns upon the construction of the rules of the Interstate Commerce Commission, the appellate court will not pass upon the question involved, if it appears that the rules of the Interstate Commerce Commission relating to the controversy, are not printed in the paper-book.

Argued Oct. 29, 1909. Appeal, No. 137, Oct. T., 1909, by plaintiff, from judgment of C. P. Clearfield Co., Sept. T., 1908, No. 239, on verdict for defendant in case of Pennsylvania Railroad Company v. Bulah Shaft Coal Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of justice of the peace. Before SMITH, J.

The opinion of the Superior Court states the case.

*Errors assigned* were various instructions.

*Hazard Alex. Murray,* with him *Thos. H. Murray* and *James P. O'Laughlin,* for appellant.

*James A. Gleason,* with him *W. H. Patterson,* for appellee.

OPINION BY ORLADY, J., March 3, 1910:

A railroad company has an unquestioned right as a common carrier to make reasonable rules in order to speed the unloading of its cars, as these are for transportation of freight and

not for its storage, nor is there any duty on a common carrier to consult either its shippers or consignees as to the wisdom of its rates of freight for carrying, or of its rules for demurrage; as to the one, it cannot exceed a lawful rate, as to the other, it cannot exceed a reasonable charge. Within these bounds it is presumed properly to conduct its own business in the interest of its stockholders and of the public: Railroad Company v. Midvale Steel Company, 201 Pa. 624; Yazoo & Mississippi Valley R. R. Co. v. Searles, 68 L. R. A. 715. A carrier by rail may establish a rule fixing a reasonable rate for the detention of cars after a sufficient period for unloading, without specific notice to the shippers or consignees: Baltimore & Ohio R. R. Co. v. Abattoir Co., 27 Pa. Superior Ct. 511.

The plaintiff recovered a judgment before a justice of the peace, on a claim for "demurrage, unloading and storage of a carload of rails with interest from December 1, 1907, $1.62, demand $82.72." The defendant brought his appeal into the common pleas, and the case proceeded to trial with the transcript of the justice as a statement of claim.

About the middle of July the defendant ordered from the Carnegie Steel Company, a carload of steel rails, which were shipped from Bessemer, Penna., to Ramey, Penna., and were consigned to the Carnegie Steel Company with directions to notify the Bulah Shaft Coal Company. They were received at Ramey station, July 27, and it is admitted that the demurrage charge should not have started until July 31, and that it was at the rate of $1.00 per day, Sundays and holidays excluded.

On August 6 or 7, the superintendent of the defendant company surrendered the bill of lading to the plaintiff's agent, who said, "There should be about $9.00 demurrage charge on this," and demanded the payment of that amount of money. This was refused, the reason given being that the claim was unjust and unreasonable, and even if for a proper amount, it should be paid by the Carnegie Steel Company as consignees.

On August 7, the defendant's superintendent notified the division superintendent of the plaintiff company of the demand of $9.00 for demurrage and protested against it being exacted of him, to which he received a reply from the division

superintendent, approving the action of the local freight agent, because "he is obliged to be governed by the rules which in this instance are regulated by the Interstate Commerce Act." Several letters were exchanged between the parties without accomplishing any result, the defendant denying his liability and that it was an unfair construction of the rules of the Interstate Commerce Commission and that the charge was unjust and unreasonable in amount.

The claim as made out by the plaintiff as we gather it from the evidence, was a demurrage charge for forty-eight days at the rate of $1.00 per day, charge for unloading the rails, $4.60, one hour engine service, $2.50, and for car service charges $26.00, aggregating $81.10, to which is added interest from December 1, 1907.

On September 4, the railroad company unloaded the freight from the car to the ground at the side of the track, after which time that car was subject to active service. The charge of $1.00 per day was continued as a storage charge until November 4, when the rails were removed by the defendant. The plaintiff's authority to charge for this demurrage is founded upon the tariff rate and charges issued by the Interstate Commerce Commission, which were produced by the plaintiff and offered in evidence, but no part of them is supplied in the appellant's paper-book, and without them we are unable to decide the very question brought before us for review. Whether the rate charged for demurrage, storage, car service and labor, is just and reasonable and in accordance with the rules of the Interstate Commerce Commission, cannot be considered for the reason that these rules are not printed in the record. The plaintiff presented no prayers for special instructions, and failed to invite the attention of the learned trial judge to the points of the case, now claimed to have been insufficiently treated. He did present a motion for judgment non obstante veredicto, which was overruled for the reason that no rule or order of the plaintiff company was offered in evidence which would entitle the plaintiff to recover demurrage in any amount; moreover, the time when demurrage commenced was not clearly settled by any testimony, and binding instructions

would have been improper even if a request therefor had been made at the trial. It is required by our rules that the evidence introduced on the trial should not only be brought up with the record, but printed in the paper-book of the appellant, and it is so obviously essential to a decision of the question raised in this case, that we cannot act without it.

The judgment is affirmed.